Ameen Jacob and Anna Jacob v. Commissioner.
Jacob v. Commissioner
Docket No. 19630.
United States Tax Court
1950 Tax Ct. Memo LEXIS 199; 9 T.C.M. (CCH) 415; T.C.M. (RIA) 50126; May 23, 1950
*199 During the taxable years 1942, 1943 and 1944, petitioners operated a taproom. They filed returns for these years purporting to show the net income from this business. Respondent rejected as incorrect these returns on the grounds that petitioners' books and records were insufficient to enable him to check petitioners' reported income and determined petitioners' net income and tax liability for the years involved by the net worth method. Held, respondent's determination of petitioners' net income by the net worth method for the taxable years 1942 and 1943 is not sustained. Held, further, that petitioners' returns based on figures which they recorded each day in memorandum books were correct when increased by an amount for each year to take into account certain items which they did not record on these books. Held, further, petitioners' returns for the taxable years were not false and fraudulent with intent to evade tax and respondent's imposition of fraud penalties is not sustained. Jack B. Dworken, Esq., 1323 Schofield Bldg., Cleveland, O., for the petitioners. William R. Bagby, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The respondent *200 determined deficiencies in income tax and penalties against petitioners for the years 1942, 1943 and 1944, as follows: Year
Deficiency
50% Penalty
1942
$ 810.45
$ 405.23
1943
989.09
369.94
1944
5,868.61
2,934.31
Petitioners, by appropriate assignments of error, contest the entire amounts of the deficiencies and fraud penalties which have been determined by the respondent. Findings of Fact Petitioners are husband and wife who, during the taxable years 1942, 1943 and 1944, resided at 2206 West 105th Street, Cleveland, Ohio. Their joint income tax returns for the taxable years were prepared on a cash basis and were filed with the Collector of Internal Revenue for the 18th District of Ohio at Cleveland. Hereafter Ameen Jacob will sometimes be referred to as petitioner. Petitioner Ameen Jacob, now about 55 years of age, was born in Syria and emigrated to Cleveland, Ohio, in 1912. He was naturalized in 1927 and married Anna Jacob in 1928. She is a native-born American and during the taxable years they had three children attending school who, in 1944, were ages six, nine and 14 years. On September 25, 1929, petitioner purchased a two-family house for *201 $4,500 located at 2206 West 105th Street and title was taken in the name of Anna Jacob. A first mortgage was issued to the Union Trust Company of Cleveland in the amount of $4,000 dated September 26, 1929, and a second mortgage was issued on this property in the amount of $200 dated September 26, 1929, payable two months after date. This mortgage note provided for interest at the rate of six per cent if paid in two months and for eight per cent if paid after two months. On September 24, 1935, Ameen Jacob was convicted and sentenced on an indictment in the United States District Court at Cleveland, Ohio, after a guilty plea, of possessing and transporting liquor without having paid taxes thereon in violation of the Federal Liquor Taxing Act of 1934. In 1936, the petitioner operated a retail liquor business or saloon located at 2713 East 55th Street in Cleveland. On or about July 28, 1941, petitioner purchased a saloon known as "Ann's Tap Room" located at 10208 West Madison Street, Cleveland. The purchase price was $5,500 which was paid by issuing checks on petitioner's bank accounts. On or about November 24, 1941, petitioner sold the business at 2713 East 55th Street, Cleveland, *202 for $4,500 which proceeds were deposited in the Central National Bank savings account in petitioner's name. The first Federal income tax return filed by either petitioner was their joint return for the calendar year 1938. Their returns for the calendar years 1938, 1939, 1940 and 1941, reported the following net income: Year
Net Income
1938
$2,804.18
1939
2,495.97
1940
2,248.42
1941
3,608.33
Since July 28, 1941, petitioner has owned and operated "Ann's Tap Room" and throughout the taxable years 1942, 1943 and 1944, it was his and his wife's sole source of income, except for small amounts received for house rent and interest. The taproom was located in a highly industrialized section of Cleveland and most of its trade came from factory workers and sales consisted mainly of whiskey, beer, wine, food and soft drinks. Both petitioners worked in the taproom and their only employee was Elias Jacob, who was Ameen's brother and was employed as a bartender. The business and the liquor license were in the name of Anna during the taxable years. Petitioner's books and records for the taxable years consisted of two notebooks, invoices for goods purchased, canceled *203 checks, paid utility bills, etc. These books contained two columns of figures with the day of the week, month and year. One of the columns contained the total daily receipts and the other the total daily disbursements. At the close of each business day Ameen counted the daily receipts, checked the cash register tapes and entered the total receipts in the notebook. As disbursements representing cash were taken out of the cash register they would be entered on a pad on top of the register and at the end of the day would be totaled and entered in the notebook. The daily totals in the notebooks were grouped by weeks and totaled and at the end of each month the monthly totals were entered. The entries in these books were made by Ameen as Anna was not present at the close of the business day. Ameen pocketed the daily receipts and the next day placed about $15 in the cash register for change and the balance in cash was either placed in a metal box which petitioner kept in his cellar at home or was deposited in one of petitioner's bank accounts. Substantial amounts of cash were kept on hand which Ameen kept in a box in the cellar of his home. Many factory workers' checks were cashed for them *204 by petitioner as a matter of accommodation. Petitioner had no bank account used exclusively for "Ann's Tap Room" but the receipts not put in his metal box at home were deposited in the various bank accounts. A savings and a checking account were maintained at the Cleveland Trust Company and a savings account was maintained at the Central National Bank in the name of Ameen and in the Society for Savings in the name of Anna. Checks were written on the Cleveland Trust Company's checking account for business, as well as personal purposes. In June 1945, a revenue agent began an investigation of petitioner's returns for the taxable years 1942, 1943 and 1944, and was later joined by a special agent of the Treasury Intelligence Unit. During this investigation the agents examined petitioner's books and records at the taproom. As pointed out above, the records consisted of small notebooks in which were listed in two columns the receipts and disbursements for the taxable years. Bills and canceled checks for all purchases and disbursements were retained. The agents requested substantiation of petitioner's records and were presented business papers such as bills and checks sustaining the recorded *205 purchases and expenses. Petitioner, however, did not keep adding machine tapes and no records to sustain the gross receipts. The totals of the gross receipts in the books, however, were the same as the totals in the returns for the taxable years. For the years 1942, 1943 and 1944, petitioners filed timely joint returns which were prepared for them by their attorney, at his office in their presence, from information they gave him from their books. Such returns disclosed the following: 1942
Gross business income
$20,739.67
Cost of goods sold and business ex-
penses
17,026.00
Business net income
3,713.67
Other income - rents $360, interest $100
460.00
Other deductions - Taxes $80
80.00
Taxable net income
4,093.67
Tax
332.29
Personal exemption and credit for
dependents
2,250.00
1943
Gross business income
$ 21,324.93
Cost of goods sold and business ex-
penses
17,450.99
Business net income
3,873.94
Other income - rent $290, interest $125
415.00
Other deductions - taxes
90.00
Taxable net income
4,198.94
Tax
164.19
Personal exemption and credit for
dependents
2,250.00
1944
Gross business income
$22,123.18
Cost of goods sold and business de-
ductions
18,318.12
Business net income
3,805.12
Other income - rent $210, dividends
and int. $390
600.00
Other deductions - taxes
90.00
Taxable net income
4,315.06
Tax
386.00
Personal exemption and credit for
dependents
2,500.00
*206 The respondent rejected as incorrect the returns which petitioner filed for the years 1942, 1943 and 1944, on the ground that petitioner's books and records were insufficient to enable him to check petitioners' reported income. The respondent determined the net income and the tax liability of the petitioner for each of the years involved on the basis of the comparison of the net worth of himself and his wife at the end of the years in question which his revenue agents compiled and added thereto estimated living expenses and other personal expenses. By this "increase in net worth basis" respondent computed petitioners' taxable net income for the year 1942 to be $7,560.55, for 1943 to be $7,068.05 and for 1944 to be $19,499.25. Based upon these figures of net income, respondent determined deficiencies and fraud penalties as set out in our preliminary statement. The cost of goods sold was not shown on the returns separately from the business expenses. However, the cost of goods purchased for sale according to a stipulation agreed to at the hearing was as follows: Beer
Soft Drinks
Year
Whiskey
and Wine
& Foods
Total
1942
$6,589.96
$4,029.59
$2,676.45
$13,296.00
1943
6,130.35
5,987.55
2,003.09
14,120.99
1944
6,478.79
7,221.08
1,288.25
14,988.12
*207 From all the evidence in the record we do not understand that the parties meant to stipulate that all the wine, liquor and food included in the above figures were actually sold in the taproom but that such figures include goods consumed on the premises by petitioner, his bartender and his family and which were not included in any record of sales. During the taxable years the records maintained by petitioners of receipts of income and expenditures were not as complete and in such detail as they should have been but were sufficient to determine with reasonable accuracy their gross income and net taxable income for those years, with certain exceptions which we shall mention as follows: Petitioner and his bartender consumed considerable liquor daily out of the store of which they kept no account and petitioner and his family and bartender consumed considerable food out of the restaurant of which no account was kept. For reasons explained more in detail in our opinion we find that $1,825 should be added to the net income reported by petitioners in each of the taxable years to reflect the cost of the liquor consumed by petitioner and his bartender out of the store and to reflect the cost *208 of the food consumed by petitioner and his family and his bartender out of the restaurant. Opinion BLACK, Judge: The issues in this proceeding are: (1) whether any deficiencies of income tax are payable by petitioners for the years 1942, 1943 and 1944; and (2) if any deficiencies are payable by petitioners, whether such deficiencies are due to fraud with intent to evade tax within the meaning of section 293(b) of the Internal Revenue Code. The burden of proof as to the first issue is upon the petitioner and the burden of proof as to the second issue is upon the respondent. Petitioner's books and records consisted of the following: two memorandum books which covered the period here in question, invoices, canceled checks and bills paid. The two memorandum books were introduced in evidence as petitioner's Exhibits 1 and 2. The invoices, canceled checks and bills paid were not introduced in evidence as it was agreed that they had all been presented to respondent's agents and identified with a reasonable degree of accuracy as petitioner's disbursements. The memorandum books showed in one column a total of the cash sales for each day of the year and in the other *209 column a total of the amount disbursed for merchandise purchased, expenses paid and other disbursements. Petitioners' income tax returns for each of the taxable years were prepared by their attorney from information contained in these books. The figures used in the returns correspond with the figures contained in these books. The books themselves, of course, are not as complete records as a taxpayer should keep of his business transactions but we are convinced that they recorded with a reasonable degree of accuracy the total cash sales in each day of petitioner's business and the total cash disbursements in each day's business. Respondent has rejected these records on the ground that no cash register tape or other records were kept to show that these records of cash receipts were correct. He concedes that an audit of the invoices for merchandise purchased corresponds to a reasonable degree with the entries in these books as to disbursements. Respondent, rejecting the correctness of petitioner's book entries as a basis for reporting petitioner's income and deductions, has used the "increase in net worth method" with the result given in our findings of fact. It is manifest that respondent's *210 method cannot be accepted as correct in view of all the evidence which we have in the record. For example, by the use of the "increase in net worth method" respondent has arrived at a figure of $7,560.55 net income for 1942, $7,068.05 net income for 1943 and $19,499.25 net income for 1944. Manifestly the latter figure of $19,499.25 net income for 1944 is beyond all reasonable probability. Petitioners were conducting a small retail liquor and restaurant business in the City of Cleveland with only three people, including petitioners, employed therein and it does not seem that by any stretch of the imagination they could have had any such income in 1944 as respondent has determined. In arriving at this amount of $19,499.25 income for 1944 by the "increase in net worth method" the Commissioner did so principally by, in effect, putting into net income a $10,000 U.S. Bond, Series G, which petitioner purchased in that year. It seems manifest to us that this $10,000 U.S. Bond could not have been purchased by petitioner with income from the business in 1944. In the first place the bond was purchased in February 1944, and not at the end of the year. It would be unrealistic to assume that a small *211 liquor and restaurant business such as petitioner was conducting could have had any such size income as that by the second month of the year. Petitioner in his testimony explained how and under what circumstances this bond was purchased. Petitioner testified that he had accumulated a large amount of currency which he kept in a metal lock box at home. One day in 1944 while conversing with his attorney he told him about this money which he kept on hand at home. His attorney told him that he was foolish to keep that much money on hand at home and advised him to take $10,000 of it and purchase a Series G, U.S. Bond with it. This, petitioner testified, he did. This testimony of petitioner was corroborated by his attorney who testified at the hearing. The attorney said he did not see the currency but that petitioner told him about having it and that he advised petitioner against keeping that much money around the house and urged him to buy a $10,000 bond with part of it and that petitioner took his advice and purchased the bond in question. Just over what period of time petitioner accumulated the $10,000 which he used to purchase this $10,000 bond in February of 1944 we would be unable *212 to make a finding but certainly most, if not all, of this $10,000 was accumulated in years prior to 1944 and did not represent 1944 income. Respondent's determination of petitioner's net income for 1942 and 1943 by the "increase in net worth method" does not seem to be so much out of line with the facts as for 1944. However, in view of all the facts in the record, some of which we have just discussed, we think respondent's determinations for all three of the taxable years on the "increase in net worth method" must be rejected. On the other hand, we are not convinced that petitioner's return of income from his business in each of the taxable years was correct. We think the records which he used as the basis for his returns were incomplete and had the effect to understate, at least to some extent, his income in each of the taxable years. We feel fairly well convinced that petitioner's recording of his daily cash receipts was done with reasonable accuracy. These showed that the business sold whiskey, beer, soft drinks and food in each of the taxable years in excess of $20,000. Petitioner has returned these amounts as gross income. Petitioner offset this by deducting expenses and cost *213 of goods sold which were not segregated. Petitioner's little book which he kept recorded the amount each day which he paid out for expenses, liquor, food, etc. We do not mean to say that he recorded these purchases, expenditures, etc. item by item. He did not do that. He recorded the total for each day in one lump sum. However, petitioner kept his invoices and these were all turned over to respondent's agents and have been checked and it has been stipulated what these show as to goods purchased for each of the years in question. For example, these show that for the year 1942, the total of petitioner's purchases for whiskey, beer and wine, soft drinks and food was $13,296. Now, of course, if all of this $13,296 was actually sold and went into sales to make up the $20,739.67 gross sales reported by petitioner for that year, it would be proper to reduce the $20,739.67 cash receipts by the amount of this $13,296 of goods purchased. However, it is clear that not all of this $13,296 went into goods sold for some of it was consumed by petitioner and his family. In the record the following questions and answers appear in the testimony of Ameen Jacob, the petitioner: "Q. Tell me, where did *214 you used to get your food? "A. Well, we used to eat there. "Q. Where? "A. Eat sometimes around the store. "Q. In other words, you got a lot of your food, did you not, from the store, as you needed it for your house? "A. Yes, we eat there and drink there." Petitioner also went on to testify that he, himself, consumed a considerable amount of liquor each day and that his brother Elias, the bartender, consumed more than he did. This liquor was consumed by petitioner and his bartender there out of the store. It seems clear that no accounting has been made by petitioner for this liquor consumed out of the store or for the food consumed by his family at the restaurant. Manifestly this food and liquor consumed by petitioner and his family and the bartender out of the store were deducted as part of "goods sold." It should not have been so deducted because it was not reflected in the cash receipts. It represented a part of goods purchased and consumed but did not represent a part of "goods sold." Therefore, we think the amount of net income reported by petitioner for each of the taxable years should be increased by some amount which will be sufficient to reflect the cost of the *215 liquor consumed there on the premises by petitioner and his bartender and to reflect the cost of the food consumed by petitioner and his family in the restaurant. It is difficult to say how much this should be; we can only make an approximation. The evidence was that petitioner's business was open seven days a week or 365 days in the year. We think $5.00 a day or a total of $1,825 for the year should be added to petitioner's income in each of the taxable years to take care of the cost of items above mentioned and we so hold. See P. P. Sweeten, 3 B.T.A. 37; O.D. 998, Cumulative Bulletin No. 5, July-December 1921, page 86. Petitioner's failure to take this $1,825 into income for each of the taxable years was not due to fraud with intent to evade tax. Petitioner, when asked at the hearing as to why he failed to report something into income, because of the liquor consumed by him and his bartender in the store and the food consumed by the family in the restaurant, replied that he did not know that he had to do so. We are convinced that this is a truthful explanation and does not warrant a finding that petitioner's failure to report the $1,825 for each of the taxable years *216 was due to fraud with intent to evade the tax. Therefore, the Commissioner's imposition of the fraud penalties is not sustained. Decision will be entered under Rule 50.